# EXHIBIT "A"

STATE OF NEW YORK
COUNTY OF NEW YORK

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY,

               Plaintiff,

      v.

HOSPITALITY SUPPORTIVE SYSTEMS LLC,

               Defendant.

Index No. _____/2017

Date Index No.
purchased April ___, 2017

**SUMMONS**

TO DEFENDANT NAMED ABOVE:

     YOU ARE HEREBY SUMMONED to answer the Complaint of the plaintiff herein and to serve a copy your answer on the plaintiff at the address indicated below within 20 days after the service of this Summons (exclusive of the day of service), or within 30 days after service is complete if the Summons is not personally delivered to you within the State of New York.

     YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

     The basis for venue is plaintiff Endurance American Specialty Insurance Company's principal place of business, which is 750 Third Avenue, 2nd Floor, New York, New York 10017.

Dated: New York, New York
       April 5, 2017

CROWELL & MORING LLP

By:  Michael K. Robles         

Michael K. Robles
Brian J. O'Sullivan

590 Madison Avenue, 20th Floor
New York, NY 10022-2524
212.223.4000

Attorneys for Plaintiff

To:

Hospitality Supportive Systems LLC
940 W. Sproul Road, Suite 103
Springfield, Pennsylvania 19064

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | Index No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| HOSPITALITY SUPPORTIVE SYSTEMS LLC, | |
| Defendant. | |

Plaintiff Endurance American Specialty Insurance Company ("Endurance"), by and through its counsel, Crowell & Moring LLP, alleges as follows for its Complaint against Defendant Hospitality Supportive Systems LLC ("HSS").

## THE PARTIES

1.      Endurance is a corporate entity organized under the laws of the State of Delaware with its principal place of business in New York, New York.

2.      HSS is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 940 W. Sproul Road, Suite 103, Springfield, Pennsylvania.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to CPLR § 302 because HSS regularly transacts business in New York; entered into contracts with a New York company; and committed a tortious act causing injury to Endurance in New York.

4.      Venue is proper in this Court pursuant to CPLR § 503 because Endurance has its principal place of business in New York County.

## FACTUAL ALLEGATIONS

### A.    The HSS Program

5.    HSS is a risk purchasing group which secures insurance coverage for restaurants, bars and taverns (the "HSS Program").

6.    As of April 1, 2015, Edward Snow ("Snow") was the sole shareholder, principal and/or member of HSS.

7.    Beginning in at least 2011, HSS secured insurance coverage for restaurants, bars and taverns participating in the HSS Program (the "HSS Program Participants") through insurance companies, including Aspen Specialty Insurance Company ("Aspen"). HSS secures coverage for the HSS Participants by procuring policies under which it is the "Named Insured" and/or "First Named Insured" under the policy. The HSS Program Participants are thereafter named as additional insureds under the policies secured by HSS.

8.    One of the services HSS provided to the HSS Program Participants was the handling, management and control of claims asserted against the HSS Program Participants. In order to handle, manage and control those claims, HSS retained the services of Selective Risk Management, LLC ("Selective Risk") as its third party claims administrator, and Selective Law Group ("Selective Law") as its claims defense counsel.

9.    Upon information and belief, HSS Program Participants reported claims to HSS. HSS and Selective Risk managed those claims and engaged Selective Law to defend the HSS Program Participants in connection with lawsuits filled with respect to the claims. Selective Risk and Selective Law kept HSS fully informed regarding the status of and developments in the claims and lawsuits asserted against HSS Program Participants.

RECEIVED NYSCEF: 04/05/2017

10.     HSS provided Aspen information regarding the claims asserted against the HSS Program Participants that we potentially covered under the policies Aspen issued to HSS (the "Aspen/HSS Policies") by means of "loss runs."

**B.     The Endurance Master Policy**

11.     In late 2014, HSS, through its broker, approached Endurance to see if it was interested in insuring the HSS Program.  HSS represented to Endurance at that time that it was a registered risk purchasing group authorized to transact insurance business in all 50 states.

12.     During late 2014 and early 2015, Endurance underwrote the HSS Program.  As part of the underwriting process, Endurance requested that HSS provide it with the loss runs and other documents reflecting the loss history for the HSS Program, including claims potentially covered under the Aspen/HSS Policies.

13.     Loss history is critically important in underwriting insurance risks.  Endurance relied upon the loss information HSS provided in determining whether to insure the HSS Program, the terms and conditions upon which it would provide that insurance and the rates and premium it would charge for that insurance.

14.     Beginning in November 2014 and continuing through February 2015, HSS provided Endurance with loss runs and other information regarding the claims and lawsuits that had been asserted against the HSS Program Participants, including those potentially covered under the Aspen/HSS Policies.   That information included, among other things, specific information regarding the claims and lawsuits that had been asserted against the HSS Program Participants, the amounts that had been paid to defend and settle those claims, and the reserves established in connection with those claims (*i.e.*, the amount that HSS Selective Risk, Selective Law and/or Aspen reasonably anticipated they would pay to defend and/or settle the claims and lawsuits).

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/05/2017

15.     The loss information HSS provided Endurance as part of the underwriting process reflected that, for the period beginning December 31, 2011, there had been a total of 62 reported claims against the HSS Program Participants with a total incurred (paid losses and reserves) of $504,514.  HSS represented that loss information was complete and accurate.  As discussed below, however, that loss information omitted numerous significant claims that had been reported to HSS.

16.     Effective April 17, 2015, Endurance issued policy number PGL10006800600 that would cover the HSS Program (the "Master Policy").

17.     The Master Policy insured only those HSS Program Participants that satisfied underwriting criteria set forth in the Master Policy.  Those underwriting criteria included, among other things, satisfactory inspection by an independent inspection company, a maximum of three claims any one year, no single claim over $15,000 and no liquor liability claims in the past three years. The Master Policy specifically excluded any risk that did not satisfy each of those criteria.

18.     HSS was the only named insured under the Master Policy.  Coverage under the Master Policy would be extended to individual HSS Program Participants by means of endorsements (specifically, General Change Endorsements) to the Master Policy.  Under the terms of the Master Policy, coverage would be extended to HSS Program Participants for a single one-year annual period from the effective date set forth in the General Change Endorsement.

19.     HSS did not have authority to issue any endorsements to the Master Policy. Rather, only Endurance was permitted to issue endorsements to the Master Policy.

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2017

20.      Each time Endurance agreed to extend coverage to a HSS Program Participant under the Master Policy, it would issue an endorsement identifying that entity, the specific location being insured, and the effective date for the coverage being provided.

21.      The process that HSS and Endurance followed for extending coverage under the Master Policy to HSS Program Participants was as follows:

      a.      HSS would submit information regarding HSS Program Participants that it believed met the underwriting criteria set forth in the Master Policy;

      b.      Endurance would review that information and advise HSS whether it agreed to extend coverage to the HSS Program Participant.

      c.      If Endurance agreed to extend coverage, it would issue a General Change Endorsement identifying the location to which coverage was being extended and the effective date for that coverage.

      d.      In turn, HSS would issue a certificate of coverage to the HSS Program Participant.  The certificate is a form that states that the named entity is covered under an insurance policy.  The certificate does not extend coverage itself.  In fact, the form certificate issued by HSS states (in bolded language) that it is being "issued as a matter of information only and confers no rights upon the certificate holder."

22.      In addition, each time Endurance agreed to extend coverage to a HSS Program Participant, it would include information relating to that entity (such as the name of the HSS Program Participant, the location insured, the effective and expiration dates for the coverage being provided to the HSS Program Participant, the applicable rate and the total premium being charged) to a risk bordereau (*i.e.*, spreadsheet) it maintained.  Endurance would provide a copy

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 04/05/2017

of the risk bordereau to HSS (through the broker) every time it updated the bordereau. Before September 2016, HSS did not question, dispute or challenge the accuracy of the information on the risk bordereau.

23.    HSS agreed to pay premium in the amount of $2,000,000 under the Master Policy. The $2,000,000 was the minimum premium that would be paid under the Master Policy.

24.    The Master Policy included the rate schedule Endurance used to calculate the specific premiums it would charge for each HSS Program Participant insured under the Master Policy. Those premiums were initially charged against the $2,000,000.00 minimum premium HSS had paid under the Master Policy. When the specific premiums calculated and charged in accordance with the rates schedule exceeded $2,000,000.00, Endurance billed those amounts to HSS as additional premiums under the Master Policy.

25.    In March 2016, the specific premiums under the Master Policy exceeded the $2,000,000.00 minimum premium. Endurance thereafter began billing HSS for additional premiums under the Master Policy.

26.    Through May 10, 2016 (the date the Master Policy expired), Endurance billed HSS a total of $942,000.00 in additional premiums under the Master Policy. Those premiums were calculated in accordance with the rate schedule set forth in the Master Policy.

27.    Upon receipt of the billings, HSS did not question, dispute or challenge the amount of the additional premiums billed under Master Policy.

28.    HSS has not paid any of the additional premiums billed under the Master Policy.

**C.    Endurance's Non-Renewal of the Master Policy**

29.    The Master Policy was effective April 17, 2015 through May 10, 2016.

30.    In early 2016, Endurance began the process by which it determined whether to renew the Master Policy and, if so, on what terms and conditions.

31.     On January 15, 2016, Endurance sent HSS a notice of non-renewal of the Master Policy.

32.     At the time, Endurance had concerns regarding the manner in which HSS was administering the HSS Program. In particular, HSS had submitted risks to Endurance that did not meet the underwriting criteria set forth in the Master Policy and had also requested that Endurance agree to retroactively extend coverage to HSS Program Participants.

33.     Endurance also learned that, contrary to its representation, HSS was not authorized to transact business in all of the states in which it was transacting business.

34.     On March 23, 2016, Endurance received updated loss runs under the Aspen/HSS Policies. Those loss runs included 75 new claims and $5 million in additional reserves.

35.     Upon information and belief, many of the 75 new claims had been reported to HSS prior to February 2015. Those claims, however, were not included in the loss runs and other loss information for the period beginning December 31, 2011 that HSS had previously provided to Endurance in connection with the underwriting of the Master Policy. If complete and accurate loss information had been provided, Endurance would not have issued the Master Policy on the terms and conditions that it did.

36.     As a result, Endurance did not renew the Master Policy and that policy expired on May 10, 2016.

**D.      Events Subsequent to the Expiration of the Master Policy**

37.     Endurance's and HSS's relationship deteriorated following the May 10, 2016 expiration of the Master Policy.

38.     HSS did not pay any of the additional premiums that had been calculated and billed under the Master Policy. To the contrary, in September 2016, HSS began to question and challenge the rates Endurance used to calculate those premiums. Indeed, notwithstanding that

7

Endurance had contemporaneously advised HSS (through the broker) of the rates being used and the premiums it was calculating for each such transaction, HSS did not question, object to, or otherwise challenge those rates and premiums prior to September 2016.

39.    By email dated September 2, 2016, HSS (through the broker) advised Endurance that it believed it owed $490,140.00 in additional premiums under the Master Policy (and not the $942,000.00 that it had been billed under the Master Policy). HSS did not pay that undisputed balance to Endurance.

40.    HSS also advised Endurance that information HSS had previously provided regarding certain HSS Program Participants, and upon which Endurance relied in determining whether to extend coverage to the HSS Program Participants under the Master Policy, was inaccurate, incomplete and/or misleading.

41.    Effective June 5, 2015, Endurance had agreed to extend coverage to Hollywood Cafe Diner, Inc. & HCD, LLC d/b/a the Hollywood Diner Café (the "Hollywood Diner Café") for a one-year period (*i.e.*, June 5, 2015 to June 5, 2016). Accordingly, Endurance did not provide coverage to the Hollywood Diner Café for any losses occurring on or after June 5, 2016. HSS was charged a premium of $9,800.00 for that coverage.

42.    In late June 2016, HSS provided Endurance notice of a claim that had been asserted against the Hollywood Diner Café for an accident occurring on June 19, 2016. Endurance denied that claim because it did not insure the Hollywood Diner Café for losses occurring on or after June 5, 2016.

43.    By email dated June 30, 2016, HSS stated that the account had been "short-termed in Endurance" from June 5, 2015 to March 6, 2016, and had been "renewed in Endurance from" March 6, 2016 to March 6, 2017. That statement was contrary to the information HSS had

provided to Endurance at the time it had agreed to extend coverage to the Hollywood Diner Café effective June 5, 2015, and the information upon which Endurance had underwrote and priced the risk. HSS also did not provide Endurance information from which it could determine whether it wanted to renew coverage for the Hollywood Diner Café effective March 6, 2016, Endurance did not agree to renew that coverage, and it did not receive any premium for the coverage that was allegedly extended to the Hollywood Diner Café for the period after June 5, 2016.

44.     In September 2016, Endurance also began receiving notices of "financed premium" for HSS Program Participants. Those notices indicated that, following the non-renewal of the Master Policy, HSS had purported to bind, extend and/or renew coverage under the Master Policy for HSS Program Participants.

45.     On October 27, 2016, representatives of Endurance, the broker, and HSS had a telephone conference to discuss issues relating to the HSS Program. HSS was specifically asked whether HSS had purported to bind coverage to any HSS Program Participants following the non-renewal of the Master Policy. HSS represented that HSS had not purported to "bind" coverage on any risks after May 10, 2016, and that no new exposures were added to Endurance's insurance subsequent to that date. On information and belief, those representations were false.

46.     The financed premium notices Endurance had received also reflected that HSS was charging the HSS Program Participants exorbitant fees in connection with the services it was providing. By way of example, one financed premium Endurance received reflected that the HSS Program Participant had agreed to pay $1,840 in premium, but $6,300 in taxes and fees. This was contrary to HSS's representation during the underwriting process that it typically charged its clients fees of "around 10%."

NYSCEF DOC. NO. 2                                                                                    RECEIVED NYSCEF: 04/05/2017

47.     On October 19, 2016, Snow on behalf of HSS filed a complaint with the Pennsylvania Insurance Department regarding Endurance's non-renewal of the Master Policy. Snow on behalf of HSS alleged that the non-renewal was "improper" because the notice Endurance had sent included the wrong expiration date.  That was the first time HSS had alleged that Endurance's non-renewal of the Master Policy was improper.

48.     By letter dated November 21, 2016, the Pennsylvania Insurance Department issued a finding that Endurance's notice of non-renewal did not comply with the Pennsylvania insurance laws.

49.     Following both the expiration of the Master Policy on May 10, 2016 and HSS's receipt of the Pennsylvania Insurance Department's November 21, 2016 letter, HSS did not act as if the Master Policy remained in effect.  HSS did not submit any information to Endurance regarding HSS Program Participants to which it wanted coverage to be extended and did not pay Endurance any premiums for any such coverage.

50.     In breach of the Master Policy, HSS has purported to bind, extend and/or renew coverage to HSS Program Participants under the Master Policy.

## COUNT I – FRAUD

51.     The allegations contained in paragraphs 1 to 50 are incorporated by reference as if fully set forth herein.

52.     HSS knowingly made false representations and concealed material information with the intention of inducing Endurance to issue the Master Policy.  Specifically, HSS represented that the loss information it had provided to Endurance was complete and accurate, and HSS also did not disclose to Endurance information regarding numerous additional claims that had been asserted against HSS Program Participants.

NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 04/05/2017

53.     HSS knew that the HSS Program loss information was material to Endurance's underwriting and assessment of the risk.

54.     HSS intended for Endurance to rely on the false, incomplete and inaccurate loss information in its underwriting of the Master Policy.

55.     Endurance in fact relied on the false, incomplete and inaccurate loss information in its underwriting of the Master Policy.  If Endurance had been provided complete and accurate loss information regarding the HSS Program, it would have either not issued the Master Policy or would have issued the Master Policy with different terms and conditions (including charging materially higher rates and premiums).

56.     As a result of the foregoing, Endurance has suffered and will continue to suffer damages.

### COUNT II – NEGLIGENT MISREPRESENTATION/NON-DISCLOSURE

57.     The allegations contained in paragraphs 1 to 56 are incorporated by reference as if fully set forth herein.

58.     HSS negligently made false representations and failed to disclose material information in connection with its procurement of the Master Policy.   Specifically, HSS represented that the loss information it had provided to Endurance was complete and accurate HSS also did not disclose to Endurance information regarding numerous additional claims that had been asserted against HSS Program Participants.

59.     HSS knew that the HSS Program's loss information was material to Endurance's underwriting process and assessment of the risk.

60.     HSS intended for Endurance to rely on the false, incomplete and inaccurate loss information in its underwriting of the Master Policy.

11

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/05/2017

61.     Endurance relied on the false, incomplete and inaccurate loss information in its underwriting of the Master Policy.  If Endurance had been provided complete and accurate loss information regarding the HSS Program, it would have either not issued the Master Policy or would have issued the Master Policy with different terms and conditions (including charging materially higher rates and premiums).

62.     As a result of the foregoing, Endurance has suffered and will continue to suffer damages.

### COUNT III – FRAUD

63.     The allegations contained in paragraphs 1 to 62 are incorporated by reference as if fully set forth herein.

64.     HSS knowingly made false representations and concealed material information from Endurance with respect to the individual HSS Program Participants to which coverage was extended under the Master Policy.  Specifically, HSS represented that it was seeking coverage for each HSS Program Participant for a one-year annual period.  HSS did not disclose that it was "short-terming" any risks under the Master Policy or subsequently renewing those risks for a full annual period.

65.     HSS knew that the information it was providing to Endurance regarding the coverage to be extended to the HSS Program Participants was material to Endurance's underwriting process and assessment of the risk.

66.     HSS intended for Endurance to rely on the information in determining whether to agree to extend coverage to the HSS Program Participants and, if so, on what terms and conditions.

67.    Endurance relied on the information in determining that it would agree to extend coverage to the HSS Program Participants and on what terms and conditions.

68.    As a result of the foregoing, Endurance has suffered and will continue to suffer damages.

## COUNT IV – RESCISSION

69.    The allegations contained in paragraphs 1 to 68 are incorporated by reference as if fully set forth herein.

70.    HSS made false representations and failed to disclose material information with the intention of inducing Endurance to issue the Master Policy.  Specifically, HSS represented that the loss information it had provided to Endurance was complete and accurate.  HSS also did not disclose to Endurance information regarding numerous additional claims that had been asserted against the HSS Program Participants.

71.    HSS knew that the HSS Program's loss information was material to Endurance's underwriting process and assessment of the risk.

72.    HSS intended for Endurance to rely on the false, incomplete and inaccurate loss information in its underwriting of the Master Policy.

73.    Endurance relied on the false, incomplete and inaccurate loss information in underwriting of the Master Policy.  If Endurance had been provided complete and accurate loss information regarding the HSS Program, it would have either not issued the Master Policy or would have issued the Master Policy with different terms and conditions (including charging materially higher rates and premiums).

NYSCEF DOC. NO. 2                                                            RECEIVED NYSCEF: 04/05/2017

74.     As a result of the misrepresentations and nondisclosures set forth above, the Master Policy should be rescinded *ab initio*, including the General Change Endorsements extending coverage to the HSS Program Participants.

75.     Endurance has provided and/or is currently providing defense and/or indemnity insurance coverage for various past and pending claims and lawsuits that had been asserted against the HSS Program Participants.

76.     Upon rescission of the Master Policy, Endurance is entitled to retain some or all of the premium paid for the Master Policy as an off-set of the costs and expenses Endurance has incurred as a result of the issuance of the Master Policy, including without limitation any defense and/or indemnity payments made by Endurance with respect to the claims and lawsuits that had been asserted against HSS Program Participants.

## COUNT V - BREACH OF CONTRACT/
## FAILURE TO PAY PREMIUMS

77.     The allegations contained in paragraphs 1 to 76 are incorporated by reference as if fully set forth herein.

78.     In the alternative, if the Master Policy is not rescinded, under the Master Policy, HSS is obligated to pay the premiums calculated and charged by Endurance in accordance with the rate schedule set forth in the Master Policy

79.     Beginning in March 2016, Endurance billed HSS a total of $942,000.00 in additional premiums under the Master Policy.  Those premiums were calculated in accordance with the rate schedule set forth in the Master Policy.

80.     Upon receipt of the billings, HSS did not question, dispute or challenge the amount of the additional premiums billed under Master Policy.

81.     HSS has not paid any of the additional premiums billed under the Master Policy

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/05/2017

82. As a result of the foregoing, Endurance has suffered damages in the amount of $942,000.00.

## COUNT VI – BREACH OF CONTRACT/FAILURE TO COMPLY WITH UNDERWRITING CRITERIA

83. The allegations contained in paragraphs 1 to 82 are incorporated by reference as if fully set forth herein.

84. In the alternative, if the Master Policy is not rescinded, HSS did not have the authority to bind, extend and/or renew coverage for any HSS Program Participant. Rather, under the parties' agreement, only Endurance had authority the authority to bind, extend and/or renew coverage to HSS Program Participants.

85. Upon information and belief, HSS has purported to bind, extend and/or renew coverage to HSS Program Participant.

86. As a result of the foregoing, Endurance has suffered and will continue to suffer damages.

## COUNT VII - DECLARATORY RELIEF

87. The allegations contained in paragraphs 1 to 86 are incorporated by reference as if fully set forth herein.

88. In the alternative, if the Master Policy is not rescinded, there is an actual and justiciable controversy regarding the parties' rights and obligations under the Master Policy.

89. Endurance seeks a declaration that it is obligated only to provide coverage in accordance with the terms and conditions of the Master Policy, specifically, solely with respect to the specific HSS Program Participants identified in the General Change Endorsements to the Master Policy and solely for a single annual period incepting from the effective date set forth in the endorsements.

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 04/05/2017

WHEREFORE, Endurance demands judgment against HSS upon the causes of action set forth above, together with costs, reasonable attorneys' fees and such other and further relief as the Court finds just and proper.

Dated: New York, New York  
      April 5, 2017

CROWELL & MORING LLP

By: _s/Michael K. Robles_ _____

Michael K. Robles  
Brian J. O'Sullivan  
590 Madison Avenue, 20th Floor  
New York, NY 10022-2524  
212.223.4000

Attorneys for Plaintiff Endurance American Specialty Insurance Company

# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------

|  |  |  |
|---|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | : | Index No.  651826/2017 |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **NOTICE OF FILING OF** |
| v. | : | **NOTICE OF REMOVAL** |
|  | : |  |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

-----------------------------------------------------------------

TO THE CLERK:

PLEASE TAKE NOTICE that Defendant, Hospitality Supportive Systems, LLC has filed a Notice of Removal of this action pursuant to 28 U.S.C. §§1331 and 1441, in the United States District Court for the Southern District of New York.  A copy of the Notice of Removal is attached hereto as Exhibit "A."

Pursuant to 28 U.S.C. §1446(d), the State Court shall proceed no further unless and until the case is remanded.

WEIR & PARTNERS LLP

By:  _/s/ Bonnie R. Golub_____
Bonnie R. Golub, Esquire
767 Third Avenue, 30th Floor
New York, NY  10017
(917) 475-8885
bgolub@weirpartners.com
*Attorneys for Defendant*

Dated: May 4, 2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------

|  |  |  |
|---|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | : | Index No.  651826/2017 |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **NOTICE OF FILING OF** |
| v. | : | **NOTICE OF REMOVAL** |
|  | : |  |
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

-------------------------------------------------------------------

## CERTIFICATE OF SERVICE

I certify that on May 4, 2017, a true and correct copy of the Notice of Filing of Notice of Removal was served by first class, United States mail, postage prepaid, upon counsel for the plaintiff addressed as follows:

> Michael K. Robles, Esquire
> Brian J. O'Sullivan, Esquire
> Crowell & Moring LLP
> 590 Madison Avenue, 20th Floor
> New York, NY  10022
> *Attorneys for Plaintiff Endurance American*
> *Specialty Insurance Company*

> _/s/ Bonnie R. Golub_
> Bonnie R. Golub, Esquire

Date:  May 4, 2017